IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ISSA BATTLE,

        Defendant.

Criminal No. 16-17

ELECTRONICALLY FILED

**MEMORANDUM ORDER DENYING DEFENDANT ISSA BATTLE'S
*PRO SE* LETTER MOTION FOR COMPASSIONATE RELEASE PURSUANT
TO 18 U.S.C. § 3582 (Doc. 126) AND COUNSELED MOTON FOR
COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 134)**

Pending before the Court are: (1) Defendant Issa Battle's *pro se* letter motion, which this Court interprets as a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582 (Doc. 126); and (2) Defendant's counseled Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 134) (collectively "Defendant's Motions for Compassionate Release").

According to the Bureau of Prison's ("BOP") website, Defendant currently is confined at FCI Gilmer, and his projected release date is January 29, 2029.[1]

**I.    Background**

On September 28, 2016, Defendant was sentenced to 188 months' imprisonment for his violation of 18 U.S.C. §§ 922(g)(1) and 924(e).[2] (Doc. 83). This sentence was at the bottom of

---

[1] *See* www.bop.gov/inmateloc/. (Last visited 6/2/2021).

[2] Defendant filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28, U.S.C. § 2255, (Doc. 114) ("Defendant's Section 2255 Motion"), which this Court denied by Memorandum Opinion and Order (Doc. 122, Doc. 123). Defendant appealed the Order denying his Section 2255 Motion to the United States Court of Appeals for the Third Circuit. (Doc. 124). *See* C.A. No. 20-2726 (3d Cir). The Court of Appeals for the Third Circuit has stayed Defendant's appeal pending its decision in *Lesko v. Secretary*

the advisory guideline imprisonment range of 188 to 235 months to which Defendant was subject, due to Defendant's offense level of 31 and his criminal history of VI.

On February 25, 2021, Defendant filed his *pro se* Motion for Compassionate Release, asserting that at FCI Gilmer, the BOP was disregarding the safety of inmates in the midst of the coronavirus pandemic, which caused inmates, including Defendant, to contract the virus. (Doc. 126).

On February 26, 2021, this Court appointed counsel to review and undertake representation of Defendant pursuant to the Administrative Orders at Misc. Nos. 19-103 and 20-629. (Doc. 129).

On March 19, 2021, defense counsel filed a counseled Motion for Compassionate Release, and medical records in support thereof. (Doc. 134, Doc. 138). In his counseled Motion, Defendant argues that: (1) his hypertension, asthma, race (African American), and previous contraction of COVID-19 "places him at serious risk of death because of the coronavirus pandemic;" (2) his incarceration at FCI Gilmer makes him "especially susceptible to contracting and expiring from the Coronavirus;" and (3) a sentence of time served is sufficient to meet the goals of sentencing because Defendant has never had a disciplinary action at FCI Gilmer, "he has learned from his mistakes and vows never to make them again," "he sincerely regrets the pain he has caused his family and friends and any harm he caused to others," and he has served a significant period of incarceration. (Doc. 134 at 22, 25, 26).

---

*Pennsylvania Department of Corrections, et* al., C.A. No. 15-9005.  (Doc. 6 at C.A. No. 20-2726) (3d Cir. May 18, 2021).

On April 21, 2021, the parties filed a Joint Status Report, indicating that they, and the United States Probation Office, had conferred regarding Defendant's pending release motions, but could not agree on resolution of the motions. (Doc. 139).

On April 30, 2021, the Government filed an opposition to Defendant's Motions for Compassionate Release, and additional medical records. (Doc. 145, Doc. 146). In its response, the Government asserts that Defendant's Motions for Compassionate Release should be denied because: (1) "a reduction in the Defendant's sentence would not be consistent with § 1B1.13, as the Defendant is a danger to the safety of the community, and it would not be consistent with the § 3553(a) factors as required by § 3582(c)(1)(A);" (2) Defendant's risk of serious illness or death from the coronavirus has been mitigated because Defendant has been fully vaccinated; and (3) Defendant's "release would disrupt any medical care and treatment that he is currently receiving as well as potentially impact any medical coverage and/or insurance premiums." (Doc. 145 at 1-2, 7, 9).

On May 3, 2021, Defendant filed a counseled Reply to the Government's Response to Defendant's Motions for Compassionate Release. (Doc. 147). In his Reply, Defendant first argues that the Government is incorrect when it argues that "only Application Note 1, to U.S.S.G. § 1B1.13 sets forth the 'extraordinary and compelling reasons' that may justify release under § 3582(c)(1)(A)." (*Id*. at 3). To the contrary, Defendant contends, this Court should conclude, as has been held by numerous appellate courts (but not the Court of Appeals for the Third Circuit, who has not yet decided this issue), "that neither the policy statement at U.S.S.G. 1B1.13 nor its related commentary bind district courts in weighing a compassionate release motion and that a district court is only bound by §§ 3553(a) and 3582(c)(1)(A)(i) in weighing a compassionate release application," and thus, that Defendant's risk of contracting COVID-19

rises to the level of an "extraordinary and compelling" reason sufficient for this Court to grant Defendant's request for compassionate release.  (*Id.*).

Second, Defendant asserts, in response to the Government's contention that Defendant has not yet served enough time for the crime committed, that Defendant's "offense was a possessory offenses at which his knowledge of his prohibited status was never considered an element when his conviction was obtained contrary to the seminal holding of the United States Supreme Court in *Rehaif v. United States*, 588 U.S. ___ (2019)," and accordingly, "the 15 year 8 month sentence Battle received is excessive in light of the *Rehaif* deficiencies outlined in [Defendant's Section 2255 Motion]." (*Id.* at 3-4) (incorporating by reference, Defendant's Section 2255 Motion).

Third, Defendant posits that his release is appropriate because the onset of the coronavirus has made Defendant's service of his sentence "far more harsh and punitive that (sic.) the Court could have anticipated at sentencing." (*Id.* at 4-5).

On May 11, 2021, Defendant filed a counseled Supplement to Defendant's Motions for Compassionate Release, as well as updated medical records.  (Doc. 148, Doc. 151).  In his Supplement, Defendant contends that: (1) his breathing problems have recently worsened; (2) he has been assessed as having, "[a]bnormal finding of blood chemistry, unspecified;" and (3) he has been prescribed new medication, "Mometasone Furoate 220 MCG/Inh," to treat his "severe asthma," all which support his Motions for Compassionate Release.  (Doc. 148 at 2).

Accordingly, Defendant's Motions for Compassionate (Doc. 126, Doc. 134), have been fully briefed, and are ripe for adjudication.

4

**II. Standard of Review**

In *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020), the United States Court of Appeals for the Third Circuit explained, with respect to 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)"):

> The compassionate-release provision states that a district court "may reduce [a federal inmate's] term of imprisonment" and "impose a term of probation or supervised release ... if it finds that ... extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). But before granting compassionate release, a district court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A).[6]
>
> [footnote 6: The sentencing reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).]

*Pawlowski*, 967 F.3d 327 at 329 (footnote 5 omitted).

In determining what should be considered "extraordinary and compelling reasons" for sentence reduction under Section 3582, the United States Sentencing Commission has defined the contours of the test, in relevant part, as follows:

> 1. Extraordinary and Compelling Reasons.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.
>
> . . .
>
> (ii) The defendant is
>   (I) suffering from a serious physical or medical condition,
>   (II) suffering from a serious functional or cognitive impairment, or
>   (III) experiencing deteriorating physical or mental health because of the aging process,

>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1.  "While the Sentencing Commission's policy statement is not dispositive, it constitutes 'helpful guidance'." *U.S. v. Watkins*, 2021 WL 1627765, at *1, n. 1 (W.D. Pa. April 7, 2021).

Prior to bringing a motion for a sentence modification pursuant to Section 3582(c)(1)(A), an inmate must first make his Section 3582(c)(1)(A) request for compassionate release to the BOP, and exhaust his administrative remedies as set forth in the statutory section.  *See U.S. v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) (explaining motion for compassionate release must be denied where "BOP has not had thirty days to consider [Defendant's] request to move for compassionate release on his behalf, and there has been no adverse decision by BOP for [Defendant] to administratively exhaust within that time period").

Finally, with respect to a Section 3582 motion for compassionate release, it is the defendant who bears the burden of proof, by a preponderance of the evidence.  *U.S. v. Grasha*, 489 F. Supp.3d 403, 406 (W.D. Pa. 2020) (citations omitted).

**III. Discussion**

*A.  Exhaustion of administrative remedies*

At some time between April 8, 2020, and September 9, 2020, Defendant submitted a request for reduction in sentence/compassionate release to the FCI Gilmer warden.  (Doc. 134-2). On September 28, 2020, FCI Gilmer's warden denied Defendant's request.  (Doc. 134-3). Accordingly, on the current record, the Court finds that Defendant has sufficiently exhausted his administrative remedies as set forth in the Section 3582.  Accordingly, Defendant's Motions for Compassionate Release Pursuant to Section 3582 shall be reviewed on their merits.

*B. Merits analysis*

Having considered: (1) whether "extraordinary and compelling" reasons justify Defendant's release pursuant to Section 3582(c)(1)(A); (2) whether such release would comply with the factors set forth in § 3553(a), to the extent that they are applicable;[3] and (3) the dangerousness consideration set forth in 18 U.S.C. § 3142(g) as applied to Defendant, the Court finds that Defendant's Motions for Compassionate Release Pursuant to Section 3582 must be denied because, as further articulated herein, Defendant has not shown that he is entitled to the relief sought.

1. *Defendant has not established an "extraordinary and compelling" reason for his compassionate release pursuant to Section 3582(c)(1)(A)*

First, the Court finds that Defendant's Motions for Compassionate Release must be denied because Defendant has not established that in light of Defendant being incarcerated at FCI Gilmer during the coronavirus pandemic, his medical conditions (asthma, hypertension, and an abnormal finding of blood chemistry, unspecified), race (African American), and previous contraction of COVID-19, alone or in combination, qualify as an "extraordinary and compelling" reason for compassionate release pursuant to Section 3582(c)(1)(A).

Concerning individuals with asthma, the Center for Disease Control and Prevention ("CDC") has concluded that "[p]eople with moderate-to-severe or uncontrolled asthma are more likely to be hospitalized from COVID-19."[4]  The United States Department of Health and Human Services provides that moderate asthma occurs if, without treatment, any of the

---

[3] These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. § 3553(a).

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. (Last visited 6/2/2021).

7

following are true: (1) symptoms occur daily; (2) inhaled short-acting asthma medication is used every day for symptom control; (3) there is some limitation of normal activities; (4) nighttime awakenings occur more than 1 time a week, but do not happen every night; and (5) lung function tests are abnormal (between 60% and 80% of the expected value).[5] The United States Department of Health and Human Services further provides that severe asthma occurs if, without treatment, any of the following are true: (1) symptoms occur throughout the day; (2) inhaled short-acting asthma medication is used several times a day for symptom control; (3) there is extreme limitation of normal activities; (4) nighttime awakenings often occur every night; or (5) lung function tests are abnormal (less than 60% of the expected value).[6] Based upon the medical evidence submitted by Defendant, Defendant has submitted sufficient evidence to support that he currently suffers from at least moderate asthma. (Doc. 151).

With respect to individuals with hypertension, the CDC has concluded that "possibly" hypertension can make a person "more likely to get severely ill from COVID-19."[7] Defendant's medical records support that he suffers from hypertension, for which he takes Hydrochlorothiazide daily, a medication he "tolerates fine." (*Id.*).

With respect to race, the CDC reports that, "[l]ong-standing systemic health and social inequities have put various groups of people at increased risk of getting sick and dying from COVID-19, including many racial and ethnic minority groups."[8]

---

[5] Asthma Care Quick Reference Guide, U.S. Dep't of Health and Human Servs. (Sept. 2012) https://www.nhlbi.nih.gov/sites/default/files/media/docs/12-5075.pdf. (Last visited 6/2/21).

[6] *Id.*

[7] Https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#MedicalConditionsAdults. (Last visited 6/2/2021).

[8] *Id.*

Concerning Defendant's concern that he will be reinfected with the coronavirus while incarcerated at FCI Gilmer,[9] however, first, the CDC reports that "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[10]  Second, while one inmate has died from the coronavirus at FCI Gilmer, 296 inmates and 71 staff members have recovered from the virus to date, and significantly, presently no inmates and only 2 staff members are testing positive for the virus.  Thus, currently, the BOP's "extensive and professional efforts to curtail the virus's spread" in its facilities is working at FCI Gilmer.  *U.S. v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Furthermore, and critically, as emphasized by the Government, Defendant has been fully vaccinated against the coronavirus, having received two doses of the COVID-19 Pfizer-BioNTech vaccine, a mRNA COVID-19 vaccine.[11]  (Doc. 146 at 32).  The CDC reports that: (1) "[c]urrently authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19. Additionally, a growing body of evidence suggests that fully vaccinated people are less likely to have asymptomatic infection or transmit SARS-CoV-2 to others;" and (2) "[v]accine effectiveness studies provide a growing body of evidence that mRNA COVID-19 vaccines offer similar protection in real-world conditions as they have in clinical trial settings, reducing the risk of COVID-19, including severe illness,

---

[9] Defendant tested positive for the coronavirus on or about December 30, 2020, after complaining of symptoms.  (Doc. 146 at 10).

[10] Https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html#:~:text=Cases%20of%20reinfection%20with%20COVID,some%20reinfections%20are%20expected.  (Last visited 6/2/2021).

[11] The CDC explains that people are considered to be fully vaccinated two weeks after they have received the second dose in a 2-dose series. Https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (updated 5/28/2021).  (Last visited 6/2/2021).  Of the approximately 1521 inmates housed at FCI Gilmer, 1032 inmates and 141 staff have been fully vaccinated against the coronavirus. Https://www.bop.gov/coronavirus/.  (Last visited 6/2/2021).

among people who are fully vaccinated by 90 percent or more."[12]

Taking into consideration all of the above, the Court finds that because Defendant is fully vaccinated against COVID-19, Defendant has not established that there is an "extraordinary and compelling" reason for Defendant's compassionate release pursuant to Section 3582(c)(1)(A). As explained by the district court in *United States v. Watkins, supra*.:

> I am persuaded by the Government's argument that the administration of an effective COVID-19 vaccine lessens the risk of serious illness or death from a COVID-19 infection. As have other courts, I recognize that the "COVID-19 situation is always-changing and that it is unclear how emerging COVID-19 variants will alter vaccine efficacy over time." *Hannigan*, 2021 WL 1599707 at * 5. As of now, however, the CDC indicates that the Defendant has significant protection against serious illness due to his vaccination.

*Watkins*, 2021 WL 1627765, at *2 (W.D. Pa. Apr. 27, 2021) (citing *U.S. v. Hannigan*, Crim. No. 19-373, 2021 WL 1599707, at *5-6 (E.D. Pa. April 22, 2021) (explaining, "[e]ach of the authorized COVID-19 vaccines are highly effective at protecting vaccinated people against symptomatic and severe COVID-19."); *U.S. v. Roper*, Crim. No. 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) (concluding that a defendant who has been inoculated with the Moderna vaccine does not have a risk of severe illness and therefore does not present an extraordinary and compelling reason for release); *United States v. Stiver*, Crim. No. 17-64, 2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021) (holding, given the defendant's Pfizer vaccination, he cannot demonstrate an extraordinary and compelling reason for release). *See also U.S. v. Medina*, Crim. No. 2:15-352, 2021 WL 1986834, at *3 (D. Utah May 18, 2021) (explaining, where the defendant had been vaccinated with the Moderna COVID-19 vaccine, "[o]ther district courts have denied compassionate release on the grounds that once a defendant is fully vaccinated, they no longer have an increased risk of illness that rises to the level of extraordinary

---

[12] Https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html. (Last visited 6/2/2021).

and compelling circumstances," and concluding, "[a]bsent any evidence challenging the efficacy of the vaccine's protection of Ms. Medina against severe illness from COVID-19, the court does not accept that Ms. Medina's conditions constitute extraordinary and compelling reasons for compassionate release") (citing *U.S. v. Burgoon,* Crim. No. 07-20072, 2021 WL 1736873, at *2 (D. Kan. May 3, 2021) (concluding, "even assuming that defendant could or would contract COVID-19 a second time, there is no reason to believe she would experience an adverse outcome given [ ] her vaccination status."); *U.S. v. Cook*, Crim. No. 11-20129, 2021 WL 1589261, at *2 (E.D. Mich. Apr. 23, 2021) (stating, "[t]he court is aware of no scientifically derived evidence showing that there is a material risk of severe complications or death from COVID-19 to fully vaccinated individuals. The remote possibility that Defendant could contract COVID-19 and develop life-threatening symptoms does not warrant the extraordinary remedy of compassionate release."); *U.S. v. Gomez-Vega*, Crim. No. 19-1382, 2021 WL 1339394, at *4 (D.N.M. Apr. 9, 2021) (finding, "even if the Court possessed jurisdiction to release [the defendant], his recent vaccination mitigates the extraordinary and compelling reasons outlined in his Motion")). Therefore, because Defendant has not established an "extraordinary and compelling" reason for Defendant to be granted compassionate release under Section 3582, Defendant's Motions for Compassionate Release shall be denied.

   2. *A sentence reduction in this case would not be consistent with the applicable factors set forth in 18 U.S.C. § 3553(a) and the dangerousness consideration set forth in 18 U.S.C. § 3142(g)*

An additional basis for the denial of Defendant's Motions for Compassionate Release Pursuant to Section 3582 is that Defendant has not established: (1) he would not be a danger to the safety of any person or the community if released, as required pursuant to § 3142(g); and

11

(2) he merits release under applicable Section 3553(a) factors.[13] More specifically, the nature and circumstances of Defendant's offense and his extensive criminal history weighs against his release and supports that Defendant would be a danger to the community if released.

Defendant currently is incarcerated for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), after the vehicle he was driving (of which he was the sole occupant) was stopped by law enforcement executing an arrest warrant for Defendant (related to a shooting), and a 45 Auto caliber Hi-point pistol, in good operating condition and loaded with a magazine containing 9 auto caliber "R-P" cartridge cases (including 1 round in the weapon's chamber), was found next to the driver's seat where Defendant was seated. (Doc. 62, ¶¶ 6-12).

While Defendant argues that this conviction should be discounted/disregarded because Defendant was convicted of being a felon in possession of a firearm prior to the United States Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019), and thus, the Government was not required, as it is now required, to prove that Defendant knew at the time he possessed the firearm, that he was a felon, the Court disagrees. Defendant was prosecuted consistent with the law applicable at the time of his conviction, and Defendant's felon in possession of a firearm conviction, and the facts underlying said conviction, are properly taken into consideration by this Court in reviewing, and denying, his Motions for Compassionate Release.

Further, Defendant's extensive and continuous criminal history, which began at the age of 15, and has continued throughout his adult life, weighs against his release and supports that

---

[13] *See* footnote 3, *supra*.

Defendant would be a danger to the community if released. As summarized at Defendant's sentencing hearing:

> His first adult conviction for a serious drug offense was committed at age eighteen, resulting in a sentence of three to six years' imprisonment in state prison.
>
> Defendant was arrested on five separate occasions at age eighteen for drug and firearm offenses, posting bond each time, and returning immediately to his criminal activity until he was finally incarcerated for those crimes.
>
> After his release from the first state prison sentence, he was convicted of another firearm offense in 2008, sentenced to three, to three and a half years to seven years in state prison. His conviction for this offense was his <u>thirteenth conviction</u>.

(Doc. 87 at 31-32) (emphasis added). Indeed, with respect to Defendant's current conviction as a felon in possession of a firearm, Defendant was designated as an "Armed Career Criminal," and sentenced accordingly, due to his numerous prior felony drug trafficking convictions.

Thus, based on the conduct underlying Defendant's current offense, Defendant's past criminal conduct (Defendant's current offense is his 7th adult conviction), and Defendant's continual refusal to discontinue engaging in illegal activity despite incarceration, Defendant has not met his burden of establishing: (1) he would not be a danger to the safety of any person or the community if released, as required pursuant to § 3142(g); and (2) he merits release under applicable Section 3553(a) factors.

Finally, the Court finds that releasing Defendant, who, to date, has served less than 50% of his current sentence, would not promote respect for the law, provide just punishment, or afford adequate deterrence.

### IV. Conclusion

For all the reasons set forth above, Defendant's *pro se* letter motion (Doc. 126), which this Court has interpreted as a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582,

and Defendant's counseled Motion for Compassionate Release Under 18 U.S.C. § 3582 (Doc. 134), are DENIED.

          SO ORDERED this 2nd day of June, 2021.

          s/Arthur J. Schwab
          Arthur J. Schwab
          United States District Judge

cc:    All ECF Registered Counsel of Record